UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| U.S. SPECIALTY INSURANCE CO., | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:18-cv-85 |
| v. | ) | Judge Curtis L. Collier |
| | ) | Magistrate Judge Susan K. Lee |
| THE ESTATE OF MARY YARBROUGH, *et al.*, | ) | |
| *Defendants*. | ) | |

**M E M O R A N D U M**

Before the Court is a motion by Plaintiff, U.S. Specialty Insurance Company ("USSIC"), for summary judgment in its action seeking a declaratory judgment that USSIC Policy AC3002765-02 (the "Policy")[1] is void (Doc. 31). Defendants have responded in opposition (Doc. 36), and Plaintiff has replied (Doc. 38). Upon review of the submissions of the parties, the record, and applicable law, the Court finds that a hearing is not necessary to resolve the issues before it. For the following reasons, the Court will **GRANT** the motion by USSIC for summary judgment (Doc. 31).

**I.    BACKGROUND**

This action arises out of an airplane crash which occurred on July 1, 2017, in Murray County, Georgia. (Doc. 1 at 5, ¶¶ 27, 29.) Dexter Gresham was flying the airplane, a six-seat 1966 Piper Aztec PA-23-250, from Auburn, Alabama to Athens, Tennessee when the airplane

---

[1] The Court also refers to USSIC Policy AC3002765-00 and AC3002765-01 as the "Policy" throughout this memorandum. Each version of the Policy was identical, but covered different periods of time.

encountered inclement weather. (*Id.* ¶¶ 11, 24-26.) All four of the airplane's occupants—Dexter Gresham and Mary Yarbrough of Etowah, Tennessee, and Austin Day and Kinsley Wilson of Corinth, Mississippi—died in the accident. (*Id.* ¶ 27.) The estates of each of the decedents subsequently gave USSIC notice of the crash, and made demands for payment on the Policy, which purportedly insured the airplane and its occupants at the time of the incident. (*Id.* ¶ 29.)

Dexter Gresham and Mary Yarbrough had initially begun the process of insuring the airplane in 2014, three years prior to the crash. (*Id.* ¶ 15.) USSIC initially received a request for an insurance quote on the airplane on February 25, 2014. (Doc. 38-1 at 6.) The request was made through the Aircraft Owners and Pilots Association ("AOPA") on behalf of Dexter Gresham and Mary Yarbrough. The request included a statement that Gresham had attained 16,319 flight hours in all forms of aircraft and 15,019 flight hours in the model of aircraft being insured. It also stated that Gresham held an Instrument Flight Rules ("IFR") rating.[2]

USSIC issued a quote to Gresham and Yarbrough, through AOPA, on February 25, 2014. (Doc. 38-1 at 4, ¶ 5.) AOPA responded to USSIC on February 27, 2014 with a request to bind the Policy, attaching an unsigned copy of an application for insurance to the request. (*Id.*) The unsigned application also stated Gresham had 16,319 flight hours in all forms of aircraft and 15,019 in the model of aircraft being insured. (*Id.*) USSIC bound the insurance coverage, as requested, then writing to AOPA that the Policy would be cancelled unless USSIC received a

---

[2] An instrument rating requires additional training, instruction, and testing beyond what is required for a private pilot certificate, as specified in 14 C.F.R. § 61.65. To be IFR rated, a pilot must complete several requirements, such as logging at least forty hours of simulated or actual instrument flight time, logging at least fifteen hours of instrument flight instruction with an authorized instrument flight instructor, and completing a practical test, among other requirements. *See* 14 C.F.R. § 61.65. IFR is required for the safe operation of an aircraft in instrument meteorological conditions, such as inside of a cloud. (Doc. 33 at 10, ¶ 5.) It is necessary because the pilot cannot rely on visual cues, but must rely almost entirely on instruments. (*Id.*)

"completed and signed" application by March 25, 2014. (*Id.* ¶ 6.) USSIC received the application, signed by both Gresham and Yarbrough, on March 18, 2014. (*Id.* ¶ 7.) The application contained the same representations regarding Gresham's flight hours. (*Id.*)

The Policy covered the period from February 27, 2014 to February 27, 2015, and provided $40,000 in aircraft physical damage coverage and single limit bodily injury coverage of $100,000 per person, $1,000,000 per occurrence. (Docs. 1-3, 37-1.) The Policy required the pilot flying the airplane to have both a current and proper medical certificate as well as a pilot certificate with necessary ratings as required by the Federal Aviation Administration ("FAA") for each flight. (Doc. 37-1.)

On February 5, 2015, USSIC received another request for a quote on behalf of Mary Yarbrough. (Doc. 38-1 at 4, ¶ 8.) The request included a statement that Gresham had 16,339 flight hours in all aircrafts and 15,039 in the model of aircraft to be insured. (*Id.* ¶ 9.) Again, the request for a quote also stated that Gresham held an IFR rating. (*Id.* ¶ 13.) USSIC again bound the insurance coverage as requested, the Policy to run from March 9, 2015 to March 9, 2016. (*Id.* at 5, ¶ 11.) Yarbrough sent a signed application back to USSIC. (*Id.* ¶ 12.) The application stated Gresham had 16,339 flight hours in all aircrafts, 15,039 in the model of aircraft being insured, and an IFR rating. (*Id.*)

USSIC later issued a third, year-long continuation of the same Policy to Yarbrough on March 9, 2017, without a new application. (Doc. 1-2.) Accordingly, the Policy was purportedly in effect at the time of the accident on July 1, 2017.

After USSIC obtained notice of the crash as well as demands on the Policy from the decedents, USSIC retained a third-party, Aviation LS, to investigate the accident. (Doc. 33 at 9-10.) The investigator determined that Gresham's pilot log books had fewer than three hundred

flying hours and that Gresham did not hold an IFR rating. (*Id.*) In addition, the investigator determined that Gresham had failed to renew his medical certification, which expired May 31, 2017. (*Id.* at 10.)

Because of the results of the investigation, USSIC brought this action seeking a declaratory judgment that the Policy was void from its inception, and that it is not obligated to provide a defense or pay benefits of any kind to Defendants arising out of the July 1, 2017 accident. Plaintiff USSIC now moves for summary judgment in its favor.

## II. **STANDARD OF REVIEW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). A factual dispute is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[nonmovant] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury

could reasonably find in favor of" the nonmovant). Each party must properly support its assertions of fact and its responses to another party's assertions of fact. Fed. R. Civ. P. 56(e).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

Plaintiff argues summary judgment should be granted in its favor and the Policy at issue declared void because Yarborough made material misrepresentations on the application for insurance that increased USSIC's risk of loss.[3] At the core of this case is a dispute as to whether USSIC and Yarborough formed a valid contract for insurance coverage under which the decedents may recover.

#### A. Choice of Law

There is no general federal law which governs contracts. Because the Court is sitting in diversity, *Erie Railroad Company v. Thomkins*, 304 U.S. 64 (1938), dictates that the Court must apply state substantive law, having its source in either state statutes or state-court decisions, when federal law does not govern the issue.[4] As to which state law a federal court should apply, the

---

[3] The Court refers to Yarbrough's statements in particular because Gresham did not sign paperwork for the second term of the Policy, which was then extended to be in purported effect at the time of the crash.

[4] Though the Declaratory Judgment Act, 28 U.S.C. § 2201, is a federal law, an action for a declaratory judgment does not provide a basis for federal jurisdiction "arising under" federal law in accord with 28 U.S.C. § 1331. *Skelly Oil Co. v. Phillips Petroleum, Co.*, 339 U.S. 667, 671-72

5

Supreme Court has determined that federal courts sitting in diversity apply the choice-of-law principles of the forum state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). This Court sits in the Eastern District of Tennessee, and in Tennessee, insurance policies and contracts are governed by the substantive law of the state where the policy was issued and delivered. *Oh. Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). Here, Plaintiff issued the Policy in Tennessee and the underlying contract was to be delivered and executed in this state. Accordingly, the Court will apply Tennessee substantive law to the claims at issue.

### B. Plaintiff's Argument that the Policy is Void

Tennessee Code Section 56-7-103 states,

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103. This provision "generally favors the validity of insurance contracts," but provides that written or oral misrepresentations in the application for a policy may void the policy if made (1) with actual intent to deceive or (2) if the misrepresentation increases the risk of loss to the insured. *Morrison v. Allen*, 338 S.W.3d 417, 428 (Tenn. 2011); *Jefferson Std. Life Ins. Co. v. Webb*, 406 S.W.2d 738, 740 (Tenn. 1966). As to the second category, to avoid coverage, an insurer must prove (1) that the answers in an application were false; and (2) that the false

---

(1977). Instead, this action is brought pursuant to the Court's power to hear cases under 28 U.S.C. § 1332.

answers materially increased the risk of loss for the insurer. *Gatlin v. World Serv. Life Ins. Co.*, 616 S.W.2d 606, 608 (Tenn. 1981).

As to falsity, the issue of whether an insured's representation on an application is true or untrue is a question of fact; however, a court may decide the issue of misrepresentation where "minds of reasonable men could reach only one conclusion as to their truth or falsity." *N.H. Ins. Co. v. Blackjack Cove, LLC*, No. 3:10-cv-607, 2014 WL 1270984, at *6 (M.D. Tenn. Mar. 26, 2014). "Generally stated, the insured has the duty to make a fair disclosure of all information material to the risk involved." *First Tenn. Bank Nat. Ass'n v. U.S. Fid. & Guar. Co.*, 829 S.W.2d 144, 147 (Tenn. Ct. App. 1991). The utmost good faith, without concealment, is required among the parties for a valid insurance contract to exist. *See id.*

As to risk of loss, a "misrepresentation increases the risk of loss when it is of such importance that it 'naturally and reasonably influences the judgment of the insurer in making the contract.'" *Sine v. Tenn. Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993) (quoting *Seaton v. Nat'l Grange Mut. Ins. Co.*, 732 S.W.2d 288, 288-89 (Tenn. Ct. App. 1987)). Whether a misrepresentation materially increases the risk of loss is a question of law for a court to determine. *Id.* But such determinations need not be complex. In *Smith v. Tennessee Farmers Life Reassurance, Co.*, for example, the Tennessee Court of Appeals observed that it would be a "matter of common sense . . . that persons with [driving under the influence] convictions have a higher risk of death, especially death by automobile accidents," and, therefore, a false answer about a former DUI conviction would be material in regards to risk of loss. 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006).

Here, Plaintiff argues Yarbrough made false statements in three respects. First, Plaintiff states that Gresham's logged pilot hours were "grossly overstated." (Doc. 31 at 2.) Plaintiff states

7

that Yarbrough represented Gresham to have 16,339 total hours of flying in all models of aircraft and 15,039 total hours of flying in the model of aircraft insured when he really only had 292.4 total hours of flying in all models and 109.3 hours in the model of aircraft insured. Second, Plaintiff states that Yarbrough represented that Gresham had an IFR rating when he did not. Third and last, Plaintiff states that Gresham failed to renew his medical certification required by the FAA and the Policy after it expired on May 31, 2017. Plaintiff has supported each of these arguments through submitting the sworn declarations of Thomas Bovre, USSIC's Aviation Claims Examiner, and David Gourgues, an investigator for Aviation LS. (Doc. 33 at 7-10). Plaintiff has also provided relevant requests for quotation, aircraft insurance applications, and copies of the Policy at issue. (Docs. 1-2, 38-1.)[5]

Defendants present no factual dispute contesting that Yarborough overstated Gresham's logged pilot hours or IFR rating. The only evidence Defendants submitted for the Court's review are copies of the Policy's coverage identification page. (Doc. 37-1, 37-2.) Defendants do so only in order to draw the Court's attention to a date on those documents in making an argument regarding risk of loss, discussed below. Defendants also make an argument regarding Gresham's medical certification, discussed below. Thus, as to Gresham's logged pilot hours and IFR rating, the Court finds that Yarborough's misrepresentations were "false" as a factual matter.

Next, Plaintiff argues these misrepresentations increased USSIC's risk of loss because information about a pilot's total flight hours and IFR rating is "necessary for an honest appraisal

---

[5] Perhaps anticipating Defendants would argue that Gresham and Yarbrough did not understand the insurance application form, Plaintiff also argues that a lack of understanding regarding an insurance application does not provide a valid defense. *See Wear v. Transamerica Life Ins. Co.*, No. 3:06-cv-244, 2007 WL 3238867, at *10 (E.D. Tenn. 2007) ("If plaintiff did not understand the questions, she should not have signed the document."). Defendants do not make any argument regarding Yarbrough's understanding of the application form.

of insurability with respect to Gresham's experience as a pilot." (Doc. 32 at 12.) USSIC submitted a sworn declaration of Christine Artinger, its underwriter, who states that such information is "vital" in "determining whether or not to accept a risk and issue a policy and constitutes one of the most important factors in assessing the insurability of the applicant." (Doc. 33 at 3.) She states that "USSIC would not have issued the policy with an annual premium of $1,525.00 had Yarborough and Gresham provided an accurate response regarding Gresham's Total Logged Pilot hours and ratings." (*Id.*) Last, she adds that "Given Gresham's actual Total Logged Pilot hours and lack of an IFR rating, USSIC would not have considered him to be a good risk, and the company would have required additional premium prior to binding coverage and allowing him to fly solo." (*Id.* at 4.)

The Court agrees that the amount of flight experience an individual has, as well as his or her ratings qualification, would "naturally and reasonably" influence an insurer's decision to issue a policy on an airplane as a matter of law. *See also U.S. Specialty Ins. Co. v. Payne*, No. 4:16-cv-52 (E.D. Tenn. Nov. 28, 2017) (holding the same). The calculus inherent to the decision to insure a pilot and aircraft would depend on how experienced the pilot is and how qualified the pilot is regarding the use of aircraft instruments.

Taken together, Plaintiff has presented sufficient evidence as to the misrepresentations regarding Gresham's logged pilot hours and IFR rating for the Court to enter a declaratory judgment finding the Policy to be void under Tennessee Code Section 56-7-103.

### C. Defendants' Arguments in Response

In a brief response, Defendants assert two arguments, neither of which convinces the Court to find otherwise. First, Defendants argue that the statements in the insurance applications could not have been relied on by USSIC when it agreed to provide coverage because each of the

applications were executed after each period for which the Policy issued. (Doc. 37 at 2.) Second, Defendants state that Gresham had a valid medical certification when the Policy was issued. (*Id.* at 3.) Defendants argue, therefore, that allowing the medical certification to expire was not a misrepresentation and did not increase any risk of loss to Plaintiff.

As to the first argument, Defendants' point is factually true but legally immaterial. The process through which the insurance contract was entered into was not linear because of the presence of a third party—AOPA—which facilitated the contracting process.[6] Plaintiff does not dispute that the insurance application was signed after the Policy coverage was bound, but points out that this only tells "part of the story." (Doc. 38 at 2-4.) It cannot be ignored that USSIC initially relied on misrepresentations presented in Yarborough's request for an insurance quotation before determining whether to accept a risk and issue the Policy at a certain premium cost. Tennessee law refers to misrepresentations either in the "*negotiations* of a contract or policy of insurance, or in the application for a contract or policy of insurance" as having the potential to void a contract of insurance. Tenn. Code Ann. § 56-7-103 (emphasis added). Because misrepresentations in the request for quotation were a part of the "negotiations of a contract or policy of insurance," it is legally insignificant that the application was signed after the Policy

---

[6] In its reply, Plaintiff submitted a second sworn declaration from Christine Artinger explaining that this process was fairly typical. She states,

> USSIC regularly receives Requests for Quotations from AOPA and other entities without a signed application. AOPA intakes information from pilots and aircraft owners and then sends that information to USSIC and other carriers to quote coverages and premiums for aircraft insurance. Coverage is sometimes bound prior to receiving the signed application, but receipt of a signed application is required for the coverage to remain in place.

(Doc. 38-1, at 5 ¶ 13.)

coverage was bound. Defendants otherwise present no evidence contesting the sworn declaration of Artinger stating that the misrepresentations were relied on by USSIC during the contracting process. Thus, Defendants do not identify any genuine dispute of material fact with this argument.

Next, Defendants argue that at the time Yarborough and Gresham entered the contract, there was no misrepresentation about Gresham's medical certification because he did hold a valid medical certification at that time. Plaintiff does not dispute that this statement is factually accurate. In its reply, however, Plaintiff makes clear that its argument regarding the medical certification is directed at the terms of the Policy itself, and not any initial misrepresentation. (Doc. 38 at 4.) The Policy required pilots to have a medical certificate and the Policy stated that "there is no coverage under the policy if the pilot does not meet these requirements." (Doc. 1-2 at 35, ¶ 3.) Accordingly, Plaintiff argues that by allowing his medical certificate to expire without renewing it, Gresham violated the terms of the Policy subsequent to its issuance.

The Court finds it unnecessary to explore this issue, having already found the misrepresentations regarding Gresham's logged hours and IFR rating sufficient to void the Policy.

## IV. CONCLUSION

Having found no genuine dispute of material fact regarding the facts and allegations in the Complaint, the Court will **GRANT** Plaintiff's motion for summary judgment (Doc. 31) and will enter judgment in its favor. The Court will **DECLARE** the Policy to be void.

**An Order Will Enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**